# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed February 27, 1893.

FRANCIS CARTER

VS.

CAROLINE F. CARTER.

*Thomas C. Weeks* for plaintiff.
*Henry C. Kennard* for defendant.

WICKES, J.—

In 1880, Francis Carter, the plaintiff in this suit, conveyed his property, consisting of four houses in the city of Baltimore, to Andrew W. Kelly, trustee, who in turn conveyed the same to the defendant, the plaintiff's wife. Whatever the motive may have been is not material, for it is not pretended that any legal obligation rested upon her to reconvey it back to him. The contention is, that in 1884 she voluntarily executed a deed for this property to the same trustee, to be conveyed by him back to her husband, which deed has been lost, and the plaintiff's bill is to compel the defendant to execute a new deed or that a trustee be appointed by the Court to

execute such a paper in her name. The defendant denies that she ever signed such a deed, and a large amount of testimony has been submitted on this point.

The defendant, however, contends that whether such deed was ever executed or not, that the Court is without power in the matter, for the reason, that as both plaintiff and defendant were volunteers, and the Court without authority to compel the wife to convey in the first instance, that it is equally without power now to compel the substitution of a deed for the one alleged to be lost.

The learned counsel for the defendant cited no cases in support of this proposition of law, and I cannot, in the absence of authority, acquiesce in it for a moment. Indeed, upon principle and authority, conceding the absence of power in the Court to compel a conveyance in the first instance, I can conceive of no good reason why a voluntary and completed gift or settlement is not valid and binding on the donor or grantor, nor why the beneficiary should be without standing in a Court of Equity to assert his rights. Certainly, the text books are full to the point. In 2 Pomeroy's Eq. Juris. 996, the distinction is broadly taken between voluntary trusts which are executed, that is, completely created or declared, and such as are merely executory, or incomplete, and the learned author says "that if a trust has been completely declared, the absence of a valuable consideration is entirely immaterial." And again, "The general doctrine is well settled. A perfect or completed trust is valid and enforcible, although purely voluntary. A voluntary trust, which is still executory, incomplete, imperfect or promissory, will neither be enforced nor aided." A person intending to make a voluntary disposition of property, may do it in two ways: (1) He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter whatever interest and title the donor has without the intervention of any trust; (2) He may make a transfer of it to a third person upon trusts declared in favor of the donee. These conclusions are sustained by the decided weight of authority, and must be regarded as the settled rules of equity jurisprudence,

upon the subject (ibid 997). In Beach on Modern Eq., Vol. 160, the same rule is laid down, and the same distinction taken between executed and executory gifts or settlements. By both authors a number of cases are cited in support of their conclusions, and with the exception of Tallman vs. Hoen, 89 N. Y. 537, cited in Beach, and made by him authority for a different doctrine, the cases abundantly sustain the rule as stated. Indeed the New York case is not at variance for the Court says in so many words, "there was no actual assignment ever executed," so that the gift was incomplete.

The English cases are full to the point—indeed the text in Pomeroy seems to be taken from them.

Richard vs. Delbridge, L. R., 18 Eq. 11; Milbroy vs. Lord, 4 De G. F. & J. 274; Ex parte Pye, 18 Ves. 149.

It is difficult to see upon principle why a different rule should prevail. Take the case under consideration. Assume the fact to be that the wife did execute a deed to Kelly, trustee, to convey to her husband the property in question—or executed such a deed directly to her husband, for it makes no difference in testing the principle. The deed was delivered to the plaintiff, it is said, and that seems to have been all the wife could do to divest herself of the legal title to the property, and vest it in her husband or in a trustee for his benefit.

She was not bound to do it, and a Court of Equity could not compel her to do it. Nor could it have intervened if she had stopped midway and refused to complete the transaction. Courts do not interfere to perfect imperfect gifts. But having executed and delivered the deed, and according to the nature of the property, having done all she could to complete her gift, to recall it would take from him something which was then his, and I can see no reason why he could not invoke the aid of a Court of Equity to prevent such a wrong. I think therefore the rights of the parties must depend upon the evidence submitted.

The Court here states the testimony at length, saying that it was a mass of contradictions on every material point.* * *

But without dwelling further upon the evidence, it is manifest I think, that some doubt must rest upon the

transaction. I incline to the opinion, however, that the paper executed was a deed of conveyance as contended by the plaintiff, because the weight of the evidence is in that direction. But what' shall be said of the defendant's understanding as to the character of the paper she signed.

Bearing in mind, that according to the testimony, the plaintiff had sent his sons, one after another, to solicit their mother to reconvey this property to him, and that she had steadily and persistently refused to do so for reasons which she explains, it is improbable that she should, even under the circumstances surrounding her, have changed her purpose so suddenly and completely. No one pretends that the paper was read to her or explained to her. So that upon this branch of the case, we have the testimony of her husband that she did know it was a deed she executed, and her own testimony that she did not.

Now the learned counsel for the plaintiff admitted that if she was imposed upon in that transaction, she could not be compelled to execute another deed, and such is undoubtedly the law.

But let us see what measure of proof is required to reform a paper in equity, for this is a species of reformation, or to establish the contents of a lost paper, which is precisely this proceeding.

In 2 Bech 546, the character of evidence necessary to establish a mistake, in reforming an instrument, is laid down as follows, "Relief is not necessarily denied because there is conflicting testimony, for that would result in a denial of justice in some of the plainest cases calling for such relief. But upon all the proofs taking the facts as they appear to the Court after eliminating testimony unworthy of belief, or based upon mistake or uncertainty as in other cases, the mistake must be established in *a clear and convincing manner and to the entire satisfaction of the Court.*

In Hutchinson vs. Ainsworth, 73 Cal. 452, the Court says: "The rule intended to be established is that the party seeking to reform a written contract, must establish the fact that there was a mutual mistake, *not simply by a preponderance of evidence,* but by such evidence as will show quite conclusively that a mistake has been made, and satisfy the Court or jury *beyond a reasonable doubt.* The cases cited in note to 1 Greenleaf, Vol. 1, Sec. 558, announce the settled rule to be, that "after the loss of a deed has been established, the secondary evidence of the contents of its operative parts must be *clear and direct,* and its execution must be *distinctly proven.*"

Certainly the defendant in this case is as worthy of belief as the plaintiff, and from all the circumstances surrounding the transaction, while I incline to the opinion that the paper executed was a deed, I am quite satisfied Mrs. Carter did not understand that she was parting with the title to this property, and ought not now to be compelled to do so.

Not only is the burden of proof upon the plaintiff to show by clear, direct and convincing evidence, the contents of the lost paper, but he must also show to the satisfaction of the Court that the defendant had full information of what she was doing, and gave to it a perfectly free assent. In the case of gifts, this doctrine is enforced with the utmost stringency, and the act must be voluntary in every sense of the word.

The proof, in my opinion, falls short of this standard in the present case.
—*The bill must therefore be dismissed.*